UNITED STATES BANKRUPTCY COURT  **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

Brian M. Strauss                                    Chapter 7
                                                    Case No. 05-24910
                        Debtor.
---------------------------------------------------------X
Alice Strauss,

                        Plaintiff,                  Adv. Pro. No. 06-8229

        -against-

Brian M. Strauss
                        Defendant.
---------------------------------------------------------X

**A P P E A R A N C E S :**
**Vincent J. Malfetano, Esq.**
**Attorney for Brian M. Strauss**
**By:   Vincent J. Malfetano, Esq.**
**9 Fairview Place**
**New Rochelle, NY 10805**

**MANN & MANN, LLP**
**Attorneys for Alice Strauss**
**By:   Monroe Yale Mann, Esq.**
**316 Westchester Avenue**
**Port Chester, NY 10573**

**ADLAI S. HARDIN, JR.,**
**UNITED STATES BANKRUPTCY JUDGE**

### DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Alice Strauss ("Alice") commenced this adversary proceeding against her ex-spouse debtor-defendant Brian M. Strauss ("Brian") seeking a determination that a state court divorce judgment (the "Judgment") for equitable distribution in the amount of $964,260[1] entered in July 1998 is nondischargeable under Section 523(a)(4), (6), and (15) of the Bankruptcy Code.

---

[1] According to Brian, the Judgment indebtedness as of May 2, 2005 amounted to $1,600,927.25, including statutory interest at 9%.

Before the Court is Alice's motion for summary judgment under the doctrine of collateral estoppel based upon the Decision and Order (the "Decision") of New York Supreme Court Justice Francis A. Nicolai entered May 27, 1998 on which the Judgment is based.

As amplified below, I conclude that Alice is entitled to summary judgment under Section 523(a)(6). Consequently, I need not and do not address Alice's claims under subsections (4) and (15).

*Jurisdiction*

This Bankruptcy Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to Bankruptcy Judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. This is a core proceeding with respect to the dischargeability of claims against the debtor under 28 U.S.C. § 157(b)(2)(I).

*Background* [2]

Alice and Brian were married for approximately eight years and have three infant children born in 1989, 1990 and 1992. Prior to the divorce action, which commenced in April 1997, Brian had been "a very successful podiatrist" and "the family had amassed considerable assets."[3]

In December 1996, the marital assets included $698,890 held in various bank accounts and securities and retirement funds worth $310,000. In April 1997, at the commencement of the divorce action, only $305,136 remained in the bank accounts, and by February 1998, almost all

---

[2] This recitation of the facts is based upon the findings of fact in the Decision.

[3] Unless otherwise indicated, quotations are from the Decision.

2

of the marital funds had been dissipated.[4]  Further, the marital home, valued at $300,000 with a mortgage of $135,000, was in foreclosure because Brian failed to pay the mortgage.

Between 1993 and November 1996, Brian made transfers to various family members totaling some $500,000, including $100,000 to Brian's sister.  The sister deposited the $100,000 into an account, made withdrawals from that account, and gave the money to Brian.  Justice Nicolai rejected Brian's arguments that his distributions constituted gifts or, in the alternative, that he gambled away the assets.

On May 27, 1998, Justice Nicolai found that Brian had concealed $1,408,890 of the marital estate prior to the divorce action.  He concluded in the Decision:

> The Court finds the marital estate, subject to equitable distribution, to be valued at $1,693,890.00.  The Court further finds that the plaintiff, as a result of the defendant's egregious conduct, is entitled to two-thirds of the estate, or $1,129,260.00.  The plaintiff is awarded the marital residence.  The defendant's one-third interest therein, or $55,000.00 is to be credited against the $1,019,260.00 that the defendant owes the plaintiff, and the plaintiff may enter judgment for $964,260.00, representing her portion of the marital estate.

Emblematic of Brian's willful and intentional conduct, Justice Nicolai noted that "the defendant was incarcerated pursuant to a decision and order of this Court which had found him in contempt" and that Brian could not be located at the time of the Decision.

### *Summary Judgment*

Federal Rule of Civil Procedure 56(c) applies to bankruptcy proceedings by application of Rule 7056 of the Federal Rules of Bankruptcy Procedure and provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on

---

[4] Although the Decision states that "by February, 1997, basically the entire amount in both the bank accounts and the funds was gone," it is apparent that the reference to 1997 was a typographical error.  The date should be February 1998.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The movant has the burden of demonstrating the absence of any genuine issue of material fact, and after this showing, the burden shifts to the non-movant to establish that there is a specific and genuine issue of material fact to warrant a trial. *Celotex*, 477 U.S. at 324. Conjecture, surmise or "metaphysical doubt" by the non-movant of the movant's assertions will not defeat a summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Bryant v. Maffuci*, 923 F.2d 979, 982 (2d Cir. 1991). If the record in its entirety could not lead a rational trier of fact to find for the non-movant, then no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587.

### *Section 523(a)(6)*

Under the Bankruptcy Code, 11 U.S.C. § 523(a)(6) provides an exception to discharge for debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." Although neither term is defined in the Code, many courts have construed the terms "willful" and "malicious" as used in this subsection. *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 142 (Bankr. S.D.N.Y. 1998). Generally, the term "willful" is not controversial. *Id*. According to the United States Supreme Court's ruling in *Kawaauhau v. Geiger,* "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

However, the term "malicious" is more complex. *In re Blankfort*, 217 B.R. at 143. The

4

Second Circuit held in *Navistar Fin. Corp. v. Stelluti* that "malicious" for the purpose of Section 523(a)(6) includes actual and constructive malice. *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996) ("The term 'malicious' means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."). Courts look to the totality of the circumstances to determine malice. *Id.* at 88 (quoting *First Nat'l Bank of Md. v. Stanley (In re Stanley),* 66 F.3d 664, 668 (4th Cir. 1995)) ("Implied malice may be demonstrated 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"). Further, this Court previously found in *Blankfort* that "[u]nder the law in this Circuit, the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor." *In re Blankfort*, 217 B.R. at 146; *see also Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990) (examining whether debtor knew or should have known that his actions would cause harm to the creditor).

Further, the injury incurred by the plaintiff need not be the primary intention or motivation behind the debtor's action in order for the Court to find that the debtor acted with malice. Substantial certainty on the part of the debtor that his actions will result in an injury to the plaintiff's property is enough for the Court to find that the debtor acted maliciously within the context of Section 523(a)(6). *Conte v. Guartem (In re Conte),* 33 F.3d 303, 305 (3d Cir. 1994) ("An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result."); *Murabito v. Bryl (In re Bryl)*, 156 B.R. 5, 8 (Bankr. D.N.H. 1993) ("[T]o establish a ground for nondischargeability of a debt under § 523(a)(6) of the Bankruptcy Code it must be proven that the debtor engaged in

deliberate acts which he knew were certain or substantially certain to result in injury to property. If this is established the debt will remain nondischargeable even though the resulting harm was not the *primary* purpose of the intentional acts.") (emphasis in original).

### *Collateral Estoppel*

Collateral estoppel (issue preclusion) applies to bankruptcy proceedings where the requisite common law elements are met. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("The bankruptcy court, therefore, was bound to give preclusive effect to the default judgment obtained in the state court by [the creditor] to the same extent as would a New York court."); *Gattalaro v. Pulver (In re Pulver)*, 327 B.R. 125, 132 (Bankr. W.D.N.Y. 2005) ("The policies underlying the doctrines of *res judicata* and collateral estoppel (claim and issue preclusion) include protecting litigants from the unnecessary burden of relitigating identical issues . . . ."). Collateral estoppel is triggered when:

> (1) the issues in both proceedings are identical
> (2) the issue has been fully litigated and actually decided in the prior proceeding
> (3) there has been a full and fair opportunity for the precluded party to litigate the issue in the prior proceeding
> (4) the issue previously litigated was essential to the final judgment of the case on its merits.

*Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003); *Graham v. Billings (In re Billings)*, 94 B.R. 803, 808 (Bankr. E.D.N.Y. 1989).

Courts have also applied collateral estoppel in proceedings specifically arising under Section 523(a)(6). *See Ball v. A.O. Smith Corp.*, No. 05-1152-bk, 2006 WL 1579545, at *3 (2d Cir. June 9, 2006); *see also Stahl v. Gross*, 288 B.R. 655, 658 (Bankr. E.D.N.Y. 2003) ("An

examination of the jury instructions in the context of the applicable law governing the tort of malicious prosecution clearly demonstrates that the issue of willfulness within the meaning of § 523(a)(6) was actually and necessarily litigated in the earlier malicious prosecution action."); *Davidcraft Corp. v. Baer (In re Baer)*, 161 B.R. 334, 337-38 (Bankr. E.D.N.Y. 1993) (Bankruptcy Court relied on District Court's finding of conversion of plaintiff's property to constitute willful and malicious conduct under § 523(a)(6)); *Metromedia Co. v. Fugazy*, 157 B.R. 761, 766 (Bankr. S.D.N.Y. 1993) (As a result of debtor's prior conviction of wire and mail fraud the Court found that "[u]nder the doctrine of collateral estoppel, [the creditor] has established that, as a matter of law, its debt was incurred as a result of the debtor's willful and malicious injury as contemplated in 11 U.S.C. § 523(a)(6).").

As recently as June 9, 2006, the Second Circuit affirmed the use of collateral estoppel in bankruptcy proceedings in *Ball v. A.O. Smith Corp. Ball,* 2006 WL 1579545, at *3. The Court of Appeals invoked Section 523(a)(6) to exempt from discharge sanctions entered by the Louisiana district court against the debtor for filing unfounded lawsuits against the plaintiff. *Id*. The Court held:

> Collateral estoppel applies here to facts found by [the District Court Judge] concerning the nature of [debtor's] conduct in the [prior] proceeding. Those facts were fully litigated in the evidentiary hearing before the Louisiana district court and were necessary to [the District Court Judge's] decision to impose sanctions against [the debtor] . . . [the District Court Judge] made specific factual findings that satisfy the Bankruptcy Code's malice requirement.

*Id*. Other courts have applied collateral estoppel to Section 523(a)(6) nondischargeability proceedings in the context of divorce judgments. *See Shteysel v. Shteysel (In re Shteysel)*, 221 B.R. 486 (Bankr. E.D.Wis. 1998); *Reid v. Reid*, 149 B.R. 669, 672 (Bankr. D.Kan. 1992) ("This Court finds that the debtor's conversion of plaintiff's property, as established through collateral

estoppel, renders the portion of plaintiff's judgment representing that conversion nondischargeable pursuant to § 523(a)(6)."); *Condict v. Condict (In re Condict),* 71 B.R. 485, 488 (Bankr. N.D.Ill. 1987) (mortgage payments owed by debtor to his former wife pursuant to prior divorce judgement were nondischargeable under Section 523(a)(6) because "[t]he issues of intent and malice were fully litigated and necessarily determined in the state court proceedings, and the bankruptcy court's application of collateral estoppel was proper.").

*Shteysel* is directly on point. In *Shteysel*, after the debtor-defendant Boris Shteysel filed for bankruptcy under Chapter 7, his former wife, plaintiff Eugenia Shteysel, brought an objection under Section 523(a)(6) to the dischargeability of a divorce judgment for approximately half the marital assets which had yet to be paid to her by Boris. *In re Shteysel,* 221 B.R. at 487-88. During the divorce proceedings, the State Court established that Boris had willfully dissipated the marital assets in an effort to prevent Eugenia from obtaining money which the Court found partially to be Eugenia's property in the divorce. *Id*. at 488. The Bankruptcy Court viewed this judgment by the State Court as a previous determination of the issue of willful and malicious behavior under Section 523(a)(6). *Id*. at 490-91. Therefore, Boris was collaterally estopped from relitigating the issue and was not able to discharge the debt that he owed to his former wife. *Id*.

Applying the foregoing principles to the facts in this case, summary judgment is granted with respect to Alice's claim that the debt owed to her is nondischargeable under Section 523(a)(6). Justice Nicolai's Decision encompassed a determination that Brian's dissipation of assets was willful and malicious and supports application of collateral estoppel in this Court. Justice Nicolai found Brian's conduct to be egregious, dishonest, and selfish in secreting and concealing the marital estate. This conduct constitutes precisely the type of aggravating

8

circumstances which courts have found to be sufficient to satisfy both the "willful" and "malicious" elements of Section 523(a)(6).

The four elements of collateral estoppel have been met in this case. The issue to be precluded, Brian's willfulness and malice, is the same as the issue involved in the prior divorce action. Justice Nicolai stated in his Decision:

> While [Brian] was frugal in his habits, the family had amassed considerable assets and was living a comfortable life as a result of his efforts, and those of the plaintiff. However, soon thereafter, the defendant secreted almost the entire estate.

The Decision makes clear that Brian secreted these funds in order to deprive his wife of the marital assets. Justice Nicolai described the defendant's actions as "egregious" and found that Brian "exhibited a wanton disregard for the well-being of his children and placed his selfish desire to have free and sole access to the marital estate above all else, including their well-being." Justice Nicolai concluded that "the concealing of [the marital assets] by the defendant [has] had great weight in the Court's deliberation, as has the fact that the defendant made transfers of assets to family members in contemplation of the matrimonial action."

It is evident from the Decision that Brian repeatedly lied regarding his dissipation of the marital estate. Justice Nicolai found:

- "[Brian's] claim that he gambled away the money is not credible."
- "Although [Brian] claims [the initial $200,000.00 he gave his parents] [was] returned, no evidence of that was introduced by the defendant. In 1996, and prior to November, the defendant gave his parents an additional $200,000.00. His claim that the money was given as a gift is not credited by the Court."
- "[T]he defendant's sister opened an account with $100,000.00 given to her by the defendant. She would make periodic cash withdrawals from that account and give the money to him. It was only after much persistent investigation by the plaintiff's attorney that this transaction was fully discovered."
- "He has not been forthright regarding any of the transfers of funds to family members."
- "[T]he Court finds that the $1,408,890.00 that the defendant has concealed was

9

    marital property, earned during the marriage through the defendant's podiatric
    practice."

  Both parties had the opportunity to and actually did litigate the issue of Brian's willfulness and malice in the divorce action.  Brian could have appealed the divorce judgement, but he did not.  Finally, Justice Nicolai's determination of Brian's willfulness and malice was essential to the final divorce judgement.  Justice Nicolai's determination that Brian secreted, hid, and wastefully dissipated the marital assets was the basis for his conclusion that Alice was entitled to two-thirds of the marital estate.  In dividing the marital assets, Justice Nicolai "considered the wasteful dissipation and secreting of assets by the defendant" and "the transfer of the funds to the defendant's sister and parents."  Justice Nicolai stated, "[t]he Court has considered [Brian's] erratic behavior and his disregard for the well-being of the children in reaching this conclusion."

  Brian's purposeful and "egregious" conduct, "wanton disregard for the well-being of his children," and "wasteful dissipation and secreting of assets" clearly warrants denial of the fresh start to which the honest but unfortunate debtor would be entitled under the Bankruptcy Code.  *In re Blankfort*, 217 B.R. at 144 (stating that the "honest but unfortunate debtor" is normally entitled to a "fresh start" absent some aggravating circumstance evincing conduct so reprehensible as to warrant its denial).  Accordingly, Brian's debt to Alice is exempt from discharge under Section 523(a)(6).

### *Order*

  Upon the foregoing, it is hereby ORDERED and ADJUDGED that Brian's discharge in

respect of his Judgment indebtedness to Alice is hereby denied.


Dated: White Plains, New York
July 21, 2006

                                                                   /s/ Adlai S. Hardin, Jr.
                                                                          U.S.B.J.